Opinion issued on January 8, 2004











     



In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01029-CR




DELFINO ALEJANDRES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 916,298




MEMORANDUM OPINION

          A jury found appellant, Delfino Alejandres, guilty of aggravated robbery and
the trial court assessed appellant’s punishment at 16 years’ confinement. We
determine whether the evidence presented at trial was legally and factually sufficient
to support the jury verdict. We affirm.
BACKGROUND
          Fifteen-year-old Peter Pham, the complainant in the underlying cause, got out
of school at George Bush High School on January 8, 2002, and drove to nearby
Affordable Storage, to pay a bill for his father. On the way, Pham noticed a car
following him, but the car turned off at a stop sign. Pham parked his car in the
parking lot at the storage facility, got out, and noticed two schoolmates, Mark
Catalina and Tran Diep, driving by. Catalina and Diep, who were friends of
appellant, drove past Pham and gave him a peace sign. 
          Next, Pham saw a maroon Honda Accord, driven by appellant, pull up from the
same direction that he had traveled. Pham recognized appellant from school and from
prior confrontations with him. Pham also recognized the passenger in appellant’s car,
Chris Valoretta, whom Pham had seen with appellant on a prior occasion.


 Appellant
pulled up toward Pham and stopped, blocking the driveway of the storage facility,
Pham’s car, and a lane of traffic on the street. Valoretta got out of the car and pointed
a shotgun at Pham. Valoretta approached Pham and ordered him to get in the back
of appellant’s car. Pham attempted to walk away, suggesting that Valoretta first
allow him to tender his check to the storage facility. Valoretta looked back at
appellant, who was watching from his car. Pham testified that Valoretta looked back
at appellant “like he didn’t know what to do.” With appellant looking on, Valoretta
then ordered Pham to give him his car keys and tried yanking them out of Pham’s
hands. When he was unable to get Pham’s keys from him, Valoretta stepped back and
shot Pham with the shotgun. 
          Pham fell after being shot, then got up and ran toward the storage facility’s
office. He heard another shot as he was running to the office. Once inside, Pham
picked up the phone and called 911. Pham saw appellant and Valoretta drive away. 
Larry Frederick, the resident manager of the storage facility, provided first aid to
Pham in the office. Frederick testified that he heard two gunshots, but neither
Frederick, nor his wife, who was also present at the time of the shooting, saw who
fired the shots. 
          After the shooting, Pham was taken by ambulance to Southwest Memorial
Hospital, where he was interviewed by Harris County Sheriff’s Deputy, Greg J.
Clopton. Pham told Deputy Clopton what happened and described appellant,
appellant’s car, and Valoretta. Later, Deputy Melody Ester interviewed Pham,
showing him a photo spread, from which he identified appellant and Valoretta as
perpetrators of the crime. Deputy Ester also interviewed John Montelongo, assistant
principal, and Mr. Baker, principal of George Bush High School, to obtain
information regarding appellant and Valoretta. Montelongo told Ester that appellant
and Valoretta were friends and often rode together to and from school. 
          Prior to Ester’s interview with Montelongo, Montelongo met with appellant to
discuss the incident. Appellant told Montelongo that he did not like Pham, that they
had had problems with each other, and that he and his friends had talked about
possibly “wasting” him.


 Appellant cooperated when Montelongo escorted him to his
car, and Montelongo testified that he believed him when appellant told him that he
did not have a weapon in the vehicle that day.



          Other relevant evidence showed 1) that a spent .12 gauge shotgun shell was
recovered from the driveway of the storage facility, 2) that appellant drove a maroon
1995 Honda Accord, 3) that appellant was an adult at the time of the shooting, and
4) that Valoretta was a juvenile at the time of the shooting and was subsequently
certified for trial as an adult. 
DISCUSSION
          In a single point of error, appellant contends that the evidence is legally and
factually insufficient to support his conviction. 
1.       Standard of Review
          In reviewing legal sufficiency, we view the evidence in the light most favorable
to the verdict and ask whether a rational trier-of-fact could find the essential elements
of the crime beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000); Valencia v. State, 51 S.W.3d 418, 423 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d). The fact finder may reasonably infer facts from the evidence
before it, credit the witnesses if it cares to, disbelieve any or all of the testimony
proffered, and weigh the evidence in the manner it chooses. Bruno v. State, 922
S.W.2d 292, 293 (Tex. App.—Amarillo 1996, no writ). 
          In reviewing factual sufficiency, we examine all the evidence neutrally and ask
whether proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination or so greatly outweighed by contrary proof as to indicate that a
manifest injustice has occurred. Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim.
App. 2003); King, 29 S.W.3d at 563; Valencia, 51 S.W.3d at 423. While conducting
our analysis, if there is probative evidence supporting the verdict, we must avoid
substituting our judgment for that of the trier-of-fact, even when we disagree with the
determination. King, 29 S.W.3d at 563. The trier-of-fact is the sole judge of the
weight and credibility of the witness’ testimony. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000).
2.       Legal Sufficiency 
          Appellant contends the evidence against him is legally insufficient to support
his conviction for aggravated robbery. Specifically, appellant argues that the
evidence shows nothing more than his presence at the scene of the crime. 
Alternatively, appellant argues that, if the evidence does show more than “mere
presence,” it is not sufficient to establish “party” liability on the part of appellant. 
          Under Texas law, a person commits the offense of robbery, a second-degree
felony, if, while committing theft, he intentionally, knowingly, or recklessly causes
bodily injury to another or intentionally or knowingly places another in fear of
imminent bodily injury or death. Tex. Pen. Code Ann. § 29.02(a) (Vernon 2003). 
A person commits aggravated robbery, a first-degree felony, if he commits robbery
and causes serious bodily injury to another, uses or exhibits a deadly weapon, or
causes or threatens imminent bodily injury to a disabled or elderly person. Id. §
29.03. 
          Under the law of parties, a person is “criminally responsible as a party to an
offense” if the offense is committed “by his own conduct, by the conduct of another
for which he is criminally responsible, or by both.” Id. § 7.01(a)(2)(Vernon 2003). 
Each party to an offense may be charged with commission of the offense. Id. §
7.01(b)(Vernon 2003). A person is criminally responsible for an offense committed
by the conduct of another if, acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person
to commit the offense. Id. § 7.02(a)(2) (Vernon 2003). 
          In determining whether a person is a party to an offense, the fact finder may
examine the events occurring before, during, and after the commission of the offense. 
Wygal v. State, 555 S.W.2d 465, 468-69 (Tex. Crim. App. 1977); Diaz v. State, 902
S.W.2d 149, 151-52 (Tex. App.—Houston [1st Dist.] 1995, no writ). Circumstantial
evidence may be sufficient to show that one is a party to the offense. Wygal, 555
S.W.2d at 469. Mere presence alone will not make one a party to an offense;
nevertheless, it is a circumstance tending to prove that a person is a party to the
offense, and, when taken with other facts, may be sufficient to show that he was a
participant. Id. at 469, n. 3. 
          Evidence is sufficient to support a conviction under the law of parties where
the actor is physically present and encourages the commission of the offense, either
by words or agreement. Diaz, 902 S.W.2d at 153. An agreement of parties to act
together in a common design can seldom be proved by words, but reliance can often
be had on the actions of parties showing an understanding and a common design to
do a certain act. Wygal, 555 S.W.2d at 469. Evidence that a defendant drove the
getaway car after a robbery has been held sufficient to convict the driver as a party
to the offense. See Thompson v. State, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985);
Brewer v. State, 852 S.W.2d 643, 647 (Tex. App.—Dallas 1993, writ ref’d). 
          In regard to legal sufficiency, appellant argues that the evidence does not show
that he acted with the culpability required to support his conviction for aggravated
robbery. He contends there is no evidence that appellant “promoted, assisted,
solicited, encouraged, directed, aided, or attempted to aid” Valoretta “before, during,
or after” the commission of the aggravated robbery. Specifically, appellant contends
there is no evidence that, prior to the date of the incident, appellant and Valoretta
planned or discussed the robbery. Appellant also argues that there is no evidence that
any interaction or communication occurred between appellant and Valoretta during
the commission of the crime, except a “quick glance” by Valoretta in appellant’s
direction before the shooting. Appellant further argues that, even if appellant
approached Pham with the intent to assault him, he never foresaw the robbery
perpetrated by Valoretta. Alternatively, appellant argues that, even if appellant drove
Valoretta to rob Pham, the shooting was “an unanticipated independent act” of
Valoretta. 
          The evidence, however, viewed in a light most favorable to the verdict, 
supports appellant’s conviction under the law of parties. The evidence at trial
established that appellant drove Valoretta to the storage facility in appellant’s car. 
Moreover, Pham offered eyewitness testimony regarding the events occurring
immediately before, during, and after the commission of the offense. Pham testified
that: 1) appellant pulled up toward Pham and used his car to block Pham’s car and
the driveway of the storage facility; 2) appellant waited in his car as Valoretta pointed
a shotgun at Pham, approached him, and told Pham to get in the back of the car, while
pointing a shotgun at him; 3) appellant watched from his car as Valoretta ordered
Pham to give him his keys, tried unsuccessfully to yank his keys away, and then shot
Pham with the shotgun; and 4) he saw appellant and Valoretta drive away in
appellant’s car.


 Additionally, Montelongo testified at trial that appellant and
Valoretta were friends, and, that Valoretta rode to and from school with appellant. 
Further, Montelongo testified that appellant told him that he did not like Pham, and,
that he and his friends had talked about possibly “wasting” him. 
          The jury could have reasonably concluded from the evidence that appellant was
physically present and encouraged the commission of the offense either by word or
deed; for example, by driving Valoretta to and from the scene. See Thompson, 697
S.W.2d at 417. Moreover, the jury could have reasonably inferred that appellant
acted in a common design with Valoretta when he watched and waited as Valoretta
got out of appellant’s car, approached Pham, pointed a shotgun at him, ordered him
into appellant’s car, ordered Pham to give him his car keys, attempted to yank Pham’s
car keys out of his hand, and, ultimately, shot him. See Brewer, 852 S.W.2d at 647-48 (concluding that in light of appellant’s inconsistent statements, the angle at which
appellant pulled his car in front of complainant’s van, and appellant’s presence as
robber’s driver immediately before and after the robbery, the evidence was sufficient
to support a rational jury finding that appellant was guilty of aggravated robbery as
a party.) Accordingly, we conclude that a rational trier-of-fact could have found
beyond a reasonable doubt that appellant was guilty of the offense of aggravated
robbery acting as a party. See Tate v. State,


 939 S.W.2d 738, 751 (Tex.
App.—Houston [14th Dist.] 1997, pet. ref’d), overruled on other grounds by
Sarmianto v. State, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet.
ref’d). 
3.       Factual Sufficiency 
          Appellant also contends the evidence was factually insufficient to prove
aggravated robbery because several “factual disputes arose during appellant’s trial.”


 
Specifically, he alleges that inconsistencies exist in Pham’s descriptions of the
offense and the perpetrators. 
          Examining the evidence neutrally, we find that the same evidence discussed
above sufficiently supports the jury’s verdict of aggravated robbery.


 The jury heard
Pham’s eyewitness testimony regarding the events that occurred in the commission
of the offense. Additionally, Pham testified regarding his statements to deputies
Clopton and Ester, wherein he described and identified appellant and Valoretta. 
Deputies Clopton and Ester also testified as to their interviews with Pham. Deputy
Ester further testified regarding her investigation of the offense, including interviews
regarding appellant and Valoretta, with the principal and assistant principal of George
Bush High School. Montelongo, the assistant principal, testified as to his personal
knowledge about the relationship between appellant and Valoretta and about his 
discussion with appellant concerning Pham and the offense. 
          Montelongo testified that appellant denied shooting Pham, and, that appellant 
described another individual who was taking credit for the shooting. Further,
Montelongo testified that appellant cooperated when he escorted him to his car, and
that he believed him when appellant told him that he did not have a weapon in the
vehicle that day. Appellant, however, now contends that appellant’s statement to
Montelongo is “inherently unreliable” because “[t]he statement was made in the
context of an interview appellant gave that contained clear fabrication.”



          Serving as the sole judge of the weight and credibility of the witness testimony, 
the jury resolved any credibility issues in this case when reaching its verdict. 
Accordingly, we must not substitute our judgment for that of the fact finder. Because
proof of guilt is not so obviously weak as to undermine confidence in the jury’s
verdict, or so greatly outweighed by contrary proof as to be manifestly unjust, we
conclude that the evidence is factually sufficient to support appellant’s conviction.
CONCLUSION
          We overrule appellant’s sole point of error and affirm the judgment of the trial
court. 
 

 
                                                             Sherry Radack
                                                             Chief Justice
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).