# NO. 12-12-00400-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JEFFIE MELDER,*<br>*APPELLANT* | § | *APPEAL FROM THE 411TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *TRINITY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jeffie Melder appeals his convictions for aggravated sexual assault of a child, sexual performance by a child, and indecency with a child. He raises six issues on appeal. We affirm.

## BACKGROUND

Appellant and Shelly Melder had a tumultuous marital relationship. They married, divorced, remarried, and have since divorced again. Three children were born during their relationship. One of the children, an eight year old at the time of the offenses, is the victim.

Appellant worked as a tug boat operator. As part of his job, he worked in two week shifts away from home. While he was away at work, Shelly, while intoxicated, told Vanessa Hale that Appellant forced her to perform oral sex on the victim. Hale, who was Shelly's friend, asked the victim about the abuse, and he stated that Shelly performed oral sex on him. Appellant discovered that Shelly had disclosed this information, and he reported the abuse to Texas Child Protective Services (CPS). As part of their investigation, CPS and law enforcement agencies were informed that Appellant told the victim to take off his clothes, come in the bedroom, and allow his mother to perform oral sex on him. Shelly also performed oral sex on Appellant. Although the various descriptions of the abuse differed as to when the abuse occurred and

exactly how it transpired, the victim stated that during at least one episode of abuse, Appellant forced him to engage in anal sex with Shelly.[1]

The authorities arrested Appellant and Shelly. Shelly negotiated a plea bargain for ten years of imprisonment in exchange for her testimony against Appellant. Appellant was indicted for aggravated sexual assault of a child, sexual performance by a child, and indecency with a child.

At trial, Appellant did not deny that the abuse occurred. Rather, he claimed that Shelly was solely responsible for the abuse. He asserted that Shelly wanted to deflect responsibility for the offenses in order to avoid a harsh punishment, as well as to obtain revenge against Appellant because of the strife and discord in their marriage.[2]

When Shelly told her friend about the abuse, she claimed that Appellant held the victim in place while some of the abuse occurred. But when asked at trial, Shelly could not remember whether she told Hale that Appellant held the victim in place because she was intoxicated when she disclosed the abuse. However, she was adamant that Appellant orchestrated the abuse. The victim and the outcry witnesses testified similarly. The victim's testimony was recorded and played for the jury. Defense counsel asked the victim to retell the story of the abuse on several occasions during his testimony. Although the frequency of the abuse and minor details varied as he described the abuse, the victim consistently stated that Appellant forced him to receive oral sex from his mother and forced him to perform anal sex on her. The primary outcry witness, a forensic interviewer, included the recorded transcript of her interview with the victim, which was consistent with the victim's testimony at trial.[3]

The jury found Appellant guilty of all three offenses, and Appellant elected that the trial court assess his punishment. After a hearing, the trial court assessed Appellant's punishment at

---

[1] In one version, it was alleged that Appellant engaged in anal sex while Shelly performed oral sex on the victim, and Appellant instructed them to "switch" so that Shelly performed oral sex on Appellant while the victim engaged in anal sex with Shelly. In another version, Shelly performed oral sex on the victim while Appellant waited and watched, and then the victim was forced to engage in anal sex with Shelly while she performed oral sex on Appellant. We note that the victim stated that the abuse occurred on several different occasions.

[2] At trial, evidence was developed that Appellant often violently assaulted Shelly, including that he would choke her until she lost consciousness, strike her repeatedly, and had even "put her head through a wall." She claimed that Appellant choked her until she lost consciousness during one of the episodes of abuse with the victim present, and that she awoke with the victim's penis in her mouth.

[3] The forensic interviewer and Shelly's friend to whom she disclosed the abuse were allowed to testify as outcry witnesses. Although defense counsel initially objected, he ultimately agreed to allow both to testify as outcry witnesses.

2

sixty years on the aggravated sexual assault of a child count, sixty years on the sexual performance by a child count, and ten years on the indecency with a child count. The trial court ordered that Appellant serve the sentences consecutively "if allowed by law." The trial court's written judgment reflects that the sentences are to be served consecutively. This appeal followed.

SUFFICIENCY OF THE EVIDENCE – SEXUAL PERFORMANCE BY A CHILD

In his second issue, Appellant argues that the evidence is insufficient to support his conviction for the sexual performance by a child count. Specifically, he contends that the State was required to prove a sexual performance as opposed to sexual conduct, and it failed to do so.

**Standard of Review and Applicable Law**

A person commits the offense of sexual performance by a child if, "knowing the character and content thereof, he employs, authorizes, or induces a child . . . to engage in sexual conduct or a sexual performance." TEX. PENAL CODE ANN. § 43.25(b) (West 2011). "Sexual conduct" includes, among other things, sexual contact, deviate sexual intercourse, or lewd exhibition of the genitals. *Id.* § 43.25(a)(2). "Deviate sexual intercourse" and "sexual contact" have the meanings assigned by Texas Penal Code Section 43.01. *Id.* § 43.25(a)(7). That section defines "deviate sexual intercourse" as "any contact between the genitals of one person and the mouth or anus of another person." *Id.* § 43.01(1) (West 2011). "Sexual contact" is defined in relevant part as "any touching of . . . any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." *Id.* § 43.01(3).

"Sexual performance" means any performance or part thereof that includes sexual conduct by a child younger than eighteen years of age. *Id.* § 43.25(a)(1). "Performance" means any play, motion picture, photograph, dance, or other visual representation that can be exhibited before an audience of one or more persons. *Id.* § 43.25(a)(3).

**Discussion**

Appellant argues that "[b]ecause [the victim] was [Appellant's child], the statute requires that there be a sexual performance, and in this case there was a lack of proof of any recording[, play, motion picture, photograph, or other visual representation] which would meet the definition of a sexual performance." However, this interpretation ignores that the statute punishes not only

3

sexual performances, but also inducing, authorizing, or employing a child to engage in sexual conduct. *See id.* § 43.25(b).

Section 43.25 "criminalizes the inducement of a child's sexual conduct regardless of whether it amounts to a sexual performance." *Dornbusch v. State*, 156 S.W.3d 859, 870 (Tex. App.—Corpus Christi 2005, pet. ref'd); *see also Emenhiser v. State*, 196 S.W.3d 915, 930 n.4 (Tex. App.—Fort Worth 2006, pet. ref'd); *Summers v. State*, 845 S.W.2d 440, 442 (Tex. App.—Eastland 1992, no pet.). Specifically, the statute states that a person commits the offense if he induces the child to "engage in sexual conduct or [separately,] a sexual performance." TEX. PENAL CODE ANN. § 43.25(b). We note that the definition of sexual "performance" includes photographs, videos, recordings, or plays. *See id.* § 43.25(a)(3). But when the allegation arises from inducing a child to engage in sexual conduct, recording the event through media or acting out a play or performance is not required. *See id.* § 43.25(a)(2), (3); *Emenhiser*, 196 S.W.3d at 930.

Nevertheless, as part of his argument, Appellant seems to contend that Section 43.25 requires crimes committed under the statute by parents to be categorized as "sexual performances" other than through sexual conduct. This interpretation stems from a sentence in the statute that states "[a] parent or legal guardian or custodian of a child . . . commits an offense if he consents to the participation by the child in a sexual performance." TEX. PENAL CODE ANN. § 43.25(b). The legislature did not include "sexual conduct" in that sentence. The logical extension of Appellant's argument would mean that parents cannot be criminally responsible under the statute for authorizing, employing, or inducing their own child to engage in sexual conduct that does not meet the definition of a sexual performance. We conclude, however, that the legislature did not intend this result.

In construing a statute, we must seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). We look first to the statute's literal text, and we read words and phrases in context and construe them according to the rules of grammar and usage. *Id.* We must presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Yazdchi v. State*, No. PD-0007-13, 2014 WL 1375461, at *4 (Tex. Crim. App. Apr. 9, 2014). When statutory language is clear and unambiguous, we give effect to its plain meaning unless to do so would lead to absurd

4

consequences that the legislature could not have possibly intended. *Id.* Ambiguity exists when the statutory language may be understood by reasonably well-informed persons in two or more different senses. *Id.* Conversely, a statute is unambiguous when it permits only one reasonable understanding. *Id.*

With respect to this dispute, giving effect to each word, phrase, clause, and sentence in Section 43.25, the only reasonable understanding is that a person, including a parent of the child, can be guilty of sexual performance by a child if he induces the child to engage in sexual conduct, regardless of whether the action amounts to a sexual performance. *See* TEX. PENAL CODE ANN. § 43.25. Specifically, a "sexual performance" can include "sexual conduct," but as those terms are defined in the statute, "sexual conduct" need not amount to a "performance" or "sexual performance" in order to constitute an offense. *See id.*; *Dornbusch*, 156 S.W.3d at 870; *Emenhiser*, 196 S.W.3d at 930 n.4; *Summers v. State*, 845 S.W.2d at 442.

The indictment in this case alleges that Appellant "did then and there intentionally or knowingly authorize or induce [the victim] to engage in sexual conduct, to wit, Shelly Melder by touching the genitals of [the victim] with the intent to arouse or gratify the sexual desire of [Appellant] and/or Shelly Rene Melder." The statute supports the charging instrument. Therefore, the State was required to prove "sexual conduct," not "sexual performance."

Appellant's second issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

In Appellant's first issue, he argues that the evidence is insufficient to support the verdict on all three offenses because the only supporting evidence came from Shelly, and she admitted falsifying the allegations in Defense Exhibit 11.

### Standard of Review

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (plurality opinion). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). Under

this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899–900. The fact finder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

## Applicable Law

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. TEX. PENAL CODE ANN. § 22.021(b)(iii) (West Supp. 2013). A person commits the offense of sexual performance by a child if, "knowing the character and content thereof, he employs, authorizes, or induces a child . . . to engage in sexual conduct or a sexual performance." TEX. PENAL CODE ANN. § 43.25(b) (West 2011). "Sexual conduct" includes, among other things, sexual contact, deviate sexual intercourse, or lewd exhibition of the genitals. *Id.* § 43.25(a)(2). "Deviate sexual intercourse" and "sexual contact" have the meanings assigned by Texas Penal Code Section 43.01. *Id.* § 43.25(a)(7). That section defines "deviate sexual intercourse" as "any contact between the genitals of one person and the mouth or anus of another person." *Id.* § 43.01(1) (West 2011). "Sexual contact" is defined in relevant part as "any touching of . . . any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." *Id.* § 43.01(3). A person commits the offense of indecency with a child if he intentionally or knowingly exposes any part of his genitals knowing that a child is present. *Id.* § 21.11(a)(2)(A) (West 2011).

A person may be convicted as a party if the offense is committed by the conduct of another for which he is criminally responsible. *Id.* § 7.01(a) (West 2011). A person is

6

criminally responsible for the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. . . ." *Id.* § 7.02(a)(2) (West 2011). Mere presence of a person at the scene of a crime either before, during, or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985). However, combined with other incriminating evidence, it may be sufficient to sustain a conviction. *Id.* In determining whether a defendant participated as a party in the commission of an offense, the jury may consider events that occurred before, during or after the offense, and may rely on acts that show an understanding and common design. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g); *Barnes v. State*, 56 S.W.3d 221, 238 (Tex. App.—Fort Worth 2001, pet. ref'd) (noting that agreement to act together in a common design is seldom proven by direct evidence, but by circumstantial evidence). Evidence that a defendant was physically present at the commission of the offense and encouraged the commission of the offense either by words or agreement is legally sufficient to support his conviction as a party to the offense. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).

In sexual abuse cases involving a child, the testimony of the victim alone is sufficient to support a conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). Moreover, a child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). Further, the jury is the sole judge of the credibility of witnesses and is free to accept or reject some, all, or none of the evidence presented by either side. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

**Discussion**

Appellant argues that the only evidence establishing the elements of the offenses came from Shelly's testimony. He contends that a letter she wrote to him while he was in jail (Defense Exhibit Number 11) shows that she had a motive to fabricate her story, namely, to deflect attention from her participation in the offenses and obtain a more lenient sentence. Finally, Appellant argues that there is no evidence the victim was capable of performing or participating in the acts the State alleges.

However, the victim testified that Appellant forced him to take off his clothes and get on the bed while Shelly performed oral sex on him, and that Appellant told him to "switch," so that the victim would perform anal sex on Shelly. There were two outcry witnesses: Vanessa Hale, one of Shelley's friends, and Kandice Kimmel, the lead forensic interviewer at Texarkana Children's Advocacy Center.[4] Shelly confided to Hale about the abuse, but disclosed only that Appellant forced her to perform oral sex on the victim. She did not disclose the other acts of abuse that occurred. Hale asked the victim about the abuse, but he was reluctant to say anything because "daddy would get mad." According to her testimony, he eventually told her that "mommy put her mouth on his pee-pee."

The victim gave much more detailed statements to Kimmel concerning the abuse. The victim told her that Appellant was "weird," that he would make him take off his clothes, and lie in bed while Shelly engaged in oral sex with him, and then that he would have to perform anal sex on Shelly. The victim told the story in different ways, and some minor details of the abuse varied when he recounted the episodes of abuse. He was clear, however, that Appellant played an active role in orchestrating the abuse, that Shelly performed oral sex on him, and that he performed anal sex on Shelly.

In Defense Exhibit Number 11, Shelly wrote that "Hell hath no fury like a woman scorned!!!" Appellant argues that this letter necessarily leads to the conclusion that Shelly falsely accused him of participating in the abuse. She explained at trial that this meant Appellant "got himself," because he is the one who called the authorities, but his plan to deflect the blame onto her "backfired." In any event, as we have stated, the jury is the judge of the credibility of the evidence and the witnesses. *Lancon*, 253 S.W.3d at 707. Also, the testimony of the victim alone and the testimony of the outcry witnesses alone can be sufficient to support the verdict of guilt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Martinez*, 178 S.W.3d at 814; *Rodriguez*, 819 S.W.2d at 873.

Appellant was charged with aggravated sexual assault of a child under the law of parties. With the testimony that Appellant "forced" and "made" the victim and Shelly engage in these acts, the jury could have reasonably concluded that Appellant encouraged, directed, or aided in

---

[4] Shortly after the victim made an outcry to Hale, Shelly took the victim to live with her at Shelly's parents' home in Linden, Texas. Once the investigation began in Northeast Texas, the child made a more detailed outcry to Kimmel at the Texarkana CAC.

the commission of the offense, thereby making him criminally responsible for the abuse. *See* TEX. PENAL CODE ANN. § 7.02(a)(2).

With regard to the sexual performance of a child count, the evidence must show that Appellant's conduct brought about the victim's sexual conduct through his persuasion or influence. *See **Bell v. State***, 326 S.W.3d 716, 720–21 (Tex. App.—Dallas 2010, pet. dism'd); *see also **Dornbusch**,* 156 S.W.3d at 866. The exercise of parental authority in requiring the child to engage in sexual conduct is sufficient to support the verdict on this offense. *See **Baker v. State***, No. 10-11-00449-CR, 2012 WL 5458474, at *11 (Tex. App.—Waco Nov. 8, 2012, no pet.) (mem. op., not designated for publication) (holding evidence is sufficient to show that parent induced child to have sex with him through exercise of parental authority). With the evidence that the victim's father forced him to engage in these acts, the jury could have likewise reasonably concluded that Appellant utilized his authority as a parent to induce the victim to engage in these acts.

With respect to the indecency with a child count, the indictment alleged that Appellant intentionally or knowingly exposed his genitals to the child victim. There is ample evidence, including the testimony from the victim and Kimmel's testimony about the victim's statements to her, that Appellant was present during the abuse, and that he received oral sex and performed anal sex while the victim was in the opposite position. The victim also testified that he saw "white stuff come out of [Appellant's] weenie." From this evidence alone, the jury could have reasonably concluded that Appellant committed the offense of indecency with a child.

Appellant's first issue is overruled.

## EXPERT TESTIMONY

Appellant argues in his third issue that Karrah Dickeson, a licensed professional counselor (LPC), was not qualified to render a diagnosis that the victim suffered posttraumatic stress disorder (PTSD) as a result of the abuse, and that the cognitive behavioral therapy technique utilized by Dickeson was unreliable.

### Standard of Review and Applicable Law

No rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *Matson v. State,* 819 S.W.2d 839, 852 n.10 (Tex. Crim. App. 1991). The inquiry is "a flexible one." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 594, 113 S. Ct. 2786,

2797, 125 L. Ed. 2d 469 (1993). Therefore, we review a court's decision to admit expert testimony based upon an abuse of discretion standard. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). An appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case. *Rodgers v. State*, 205 S.W.3d 525, 527-28 (Tex. Crim. App. 2006).

A party may challenge expert testimony on at least three specific grounds. First, a party may allege that the witness does not qualify as an expert because the witness lacks the requisite knowledge, skill, experience, training, or education in the subject matter of the expert's testimony. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *see* TEX. R. EVID. 702. Second, a party may allege that the subject matter of the testimony is inappropriate because it is unreliable. *Vela*, 209 S.W.3d at 131, 133–34; *see* TEX. R. EVID. 705(c); *see also Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Third, a party may allege that the testimony will not assist the fact finder in deciding the case. *Vela*, 209 S.W.3d at 131; *see* TEX. R. EVID. 401, 702. Respectively, these three requirements of expert testimony are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Vela*, 209 S.W.3d at 131. The three requirements raise distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another. *Turner v. State*, 252 S.W.3d 571, 584 n.5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that an objection based on the expert's qualifications did not preserve the reliability issue).

**Discussion**

Dickeson is an LPC who treated the victim after the abuse was disclosed. She testified that the victim suffered PTSD as a result of the abuse. As part of her testimony, she testified that her credentials allow her to diagnose mental and emotional disorders such as PTSD. Appellant objected to her qualifications and attempted to show that state law does not allow her to make such a diagnosis. This argument stems from provisions in the Texas Occupations Code regulating LPCs that prevent them from practicing medicine and from diagnosing a "physical condition or disorder." *See* TEX. OCC. CODE ANN. §§ 503.003(b)(1)-.004 (West 2012).

10

However, when these provisions are read in context, it is apparent that LPCs may not diagnose physical conditions or physical disorders, but an LPC who has the requisite training may diagnose mental and emotional disorders. Specifically, the statute authorizes LPCs to assess, evaluate, and treat mental, emotional, or behavioral disorders. *Id.* § 503.003(a)(2)-(4). As part of these capabilities, the LPC may plan, implement, and evaluate treatment plans, including the "assessment" of mental, emotional, or behavioral disorders. *Id.* § 503.003(a)(4). "Assessment" means the "selection, administration, scoring, and interpretation of an instrument designed to assess an individual's . . . mental, emotional, and behavioral disorders, and the use of methods and techniques for understanding human behavior that may include the evaluation, assessment, and treatment by counseling methods, techniques, and procedures for mental and emotional disorders . . . ." *Id.* § 503.003(b)(1).

The Texas Board of Examiners of Professional Counselors, the agency responsible for regulating LPCs, has clarified that LPCs may diagnose mental or emotional disorders that are not physical conditions or physical disorders. Specifically, the Board enacted a regulation stating that

> [t]he use of specific methods, techniques, or modalities within the practice of professional counseling is limited to professional counselors appropriately trained and competent in the use of such methods, techniques, or modalities. Authorized counseling methods techniques and modalities may include, but are not restricted to, the following:
> . . .
>
> diagnosing mental disorders; but does not permit the diagnosis of a physical condition or physical disorder . . . .

22 TEX. ADMIN. CODE § 681.31(16) (2013) (Tex. Bd. of Prof'l Counselors, Counseling Methods and Practices). PTSD is a recognized mental disorder. *Taylor v. State*, 268 S.W.3d 571, 588 (Tex. Crim. App. 2008). Consequently, Dickeson, as an LPC, was qualified to make the PTSD diagnosis.

Also as part of this issue, Appellant appears to argue that cognitive behavioral therapy is unreliable, or that the State failed to prove its reliability. Dickeson testified that cognitive behavioral therapy is a relatively new technique, but has become the most utilized and peer-reviewed technique in treating child sexual abuse cases. She stated that she implemented the technique here as part of treating the victim's PTSD. However, Appellant did not object to the

11

reliability of this technique, and has thus waived review of that issue on appeal.[5]  *See Turner*, 252 S.W.3d at 584 n.5.

Appellant's third issue is overruled.


## IMPROPER JURY ARGUMENT

In his fourth issue, Appellant argues that the State improperly argued to the jury that Appellant failed to produce evidence, which amounted to a comment on his failure to testify. However, he did not object to the State's argument.

When a defendant fails to object to a jury argument or fails to pursue an objection to a jury argument to an adverse ruling, he forfeits his right to complain about the jury argument on appeal.  *Sanchez v. State*, 120 S.W.3d 359, 366-67 (Tex. Crim. App. 2003); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

The court of criminal appeals reaffirmed that the holding in *Cockrell* remains the law, notwithstanding the claim that the offending argument was "manifestly improper."  *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004).  This rule applies even where the improper argument allegedly violates certain constitutional rights, such as the Fifth Amendment privilege against self-incrimination.  *See, e.g., Calderon v. State*, 950 S.W.2d 121, 137 (Tex. App.—El Paso 1997, no pet.) (objection required where prosecutor commented on defendant's failure to testify); *Cacy v. State*, 942 S.W.2d 783, 784 (Tex. App.—Waco 1997, pet. ref'd) (refusing to address merits of unobjected to jury argument that commented on defendant's failure to testify).

Appellant's fourth issue is overruled.


## CONSECUTIVE SENTENCES

In his fifth issue, Appellant contends that the trial court abused its discretion in ordering that his sentences be served consecutively because the total sentence imposed exceeds the

---

[5] We note that although Appellant generally objected to Dickeson's qualifications to make a diagnosis, he did not specifically argue in any detail in his brief that she lacked the requisite training to diagnose the victim with PTSD.  Appellant does appear to attack Dickeson's qualifications to perform cognitive behavioral therapy. However, therapy concerns treatment, which is distinct from Dickeson's qualifications to diagnose PTSD. Moreover, Appellant's brief is unclear as to how Dickeson's treatment methodology for the victim is relevant on appeal. *See* TEX. R. APP. P. 33.1; *Pena v. State,* 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

maximum sentence under *Apprendi v. New Jersey*.[6]  As part of this issue, Appellant also argues that a separate factual finding was required by the jury to support the consecutive sentences, even though the trial court assessed his punishment.  In a related sixth issue, Appellant argues that the trial court was without authority to cumulate the sentence for indecency with a child with the sentences for the other offenses.  Because these issues are related, we address them together.

**Standard of Review and Applicable Law**

The trial court has the discretion to order that the sentences for aggravated sexual assault of a child, sexual performance of a child, and indecency with a child run concurrently or consecutively, even if the offenses arise out of the same criminal episode.  TEX. PENAL CODE ANN. § 3.03(b)(2)(A) (West Supp. 2013); TEX. CODE CRIM. PROC. ANN. art. 42.08 (West Supp. 2013).  The trial court is free to make this determination as long as the individual sentences are not elevated beyond their respective statutory maximums. ***Barrow v. State***, 207 S.W.3d 377, 382 (Tex. Crim. App. 2006).

**Discussion**

First, we note that Appellant failed to make an *Apprendi* objection at trial and thus waived his complaint.  *See* ***White v. State***, No. 02–02–00143–CR, 2003 WL 865351, at *2–3 (Tex. App.—Fort Worth Mar. 6, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that appellant waived his *Apprendi* complaint by not objecting on those grounds at trial); *see also* ***Lacy v. State***, Nos. 14–05–00775–CR, 14–05–00776–CR, 14–05–00777–CR, 14–05–00778–CR, 2006 WL 2862156, at *2 n. 1 (Tex. App.—Houston [14th Dist.] Oct. 10, 2006, no pet.) (mem. op., not designated for publication) (holding complaint waived but noting split in intermediate courts on whether defendant waives *Apprendi* complaint by failing to object in trial court).

Second, even if no objection was necessary to preserve this issue, the trial court's decision to cumulate his sentences does not violate *Apprendi*.  The *Apprendi* line of cases holds that any finding of fact, other than a prior conviction, that increases the maximum punishment which can be assessed for an offense must be made by the jury and proved beyond a reasonable doubt.  *See* ***Apprendi v. New Jersey***, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000); *see also* ***Alameda v. State***, 235 S.W.3d 218, 224 (Tex. Crim. App. 2007); ***Barrow***, 207 S.W.3d at 380.  *Apprendi* and its progeny deal with the upper-end extension of individual

---

[6] *See generally,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

sentences when that extension is contingent upon findings of fact that were never submitted to the jury. *See Alameda*, 235 S.W.3d at 224; *Barrow*, 207 S.W.3d at 380.

*Apprendi* does not address a trial court's authority to cumulate sentences for more than one offense when that authority is provided by statute and is not based upon discrete factfinding, but is wholly discretionary. *See id.* Thus, *Apprendi* is inapplicable in that circumstance. Both federal and state courts have found no *Apprendi* violation where a trial court orders the cumulation of sentences that individually lie within the statutory range of punishment but for which the cumulative total exceeds the prescribed statutory maximum for any single offense. *See, e.g., United States v. McWaine*, 290 F.3d 269, 276 (5th Cir. 2002); *Baylor v. State*, 195 S.W.3d 157, 160 (Tex. App.—San Antonio 2006, no pet.); *Tyson v. State*, 172 S.W.3d 172, 176-77 (Tex. App.—Fort Worth 2005, pet. ref'd); *Marrow v. State*, 169 S.W.3d 328, 330-31 (Tex. App.—Waco 2005, pet. ref'd).

In the instant case, the trial court did not impose punishment beyond the statutory range for any of Appellant's convicted offenses. Rather, the court remained within the statutory maximum in assessing punishment at sixty years for each of the first degree felonies, and ten years for the indecency with a child count. The court, under the relevant statutes, exercised its discretion to determine that Appellant consecutively serve his sentences. *See* TEX. PENAL CODE ANN. § 3.03(b)(2)(A); TEX. CODE CRIM. PROC. ANN. art. 42.08. Accordingly, that Appellant's cumulative jail time exceeds the statutory maximum for each of his individual offenses does not constitute an *Apprendi* violation.

Appellant also seems to argue as part of this issue that, under *Apprendi*, since the total sentence exceeds that of a first degree felony, a separate factual finding was required by the jury to support his consecutive sentences. However, the Texas Court of Criminal Appeals directly addressed this question under these circumstances, and determined that the decision to cumulate sentences does not turn on a finding of fact, but on the exercise of the court's discretion by statute. *Barrow*, 207 S.W.3d at 380; *Alameda v. State*, 235 S.W.3d 218, 224 (Tex. Crim. App. 2007). So even if the jury assesses the sentences, a trial judge may order that the sentences run consecutively without the need to submit the issue to the jury. *See id.*

Appellant contends further that under Texas Penal Code Section 3.03, the pertinent statute giving the trial court the discretion to cumulate sentences, "cumulation is not possible for [the indecency with a child count] which alleged a violation of § 22.11[, because it] is not one of

the enumerated penal code violations which may be cumulated." However, indecency with a child is found within Section 21.11 of the Penal Code, not Section 22.11. Section 3.03 specifically authorizes the trial court to cumulate the sentence for an offense under Section 21.11 (indecency with a child) with sentences for other sexual offenses. *See* TEX. PENAL CODE ANN. § 3.03(b)(2)(A).

Appellant's fifth and sixth issues are overruled.


## DISPOSITION

Having overruled Appellant's six issues, we ***affirm*** the judgment of the trial court.


SAM GRIFFITH
Justice

Opinion delivered May 14, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 14, 2014**

**NO. 12-12-00400-CR**

**JEFFIE MELDER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 411th District Court

of Trinity County, Texas (Tr.Ct.No. 9863-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*